UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| NATIONAL ORGANIZATION FOR MARRIAGE, et al., | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil No. 09-538-B-H |
| WALTER F. McKEE, et al., | ) ) | |
| Defendants | ) | |

### RECOMMENDED DECISION ON PLAINTIFF'S MOTION FOR STAY[1]

The plaintiff National Organization for Marriage ("NOM") has moved to stay this court's order that the parties file unsealed versions of previously-sealed documents that they stipulated would constitute the record at a bench trial held on August 12, 2010. *See* Motion for Stay Pending Appeal ("Motion for Stay") (Docket No. 167). For the following reasons, I recommend that the plaintiff's motion be denied.

### I. Background

On June 25, 2010, NOM filed a Second Amended Verified Complaint, alleging in relevant part that Maine's law governing political action committees and independent campaign expenditures was unconstitutional. *See* Second Amended Verified Complaint for Declaratory and Injunctive Relief (Docket No. 114). Simultaneously, NOM filed a motion for a preliminary

---

[1] It is not entirely clear whether a magistrate judge has jurisdiction to rule on a post-judgment motion to stay where, as here, the parties have not consented to his or her exercise of such authority. *See, e.g., Virgil v. Burt*, No. 05-CV-72480-DT, 2007 WL 1790756 (E.D. Mich. 2007). Because denial of this motion could be seen as dispositive of one or more of the plaintiff's claims, I will err on the side of caution and issue a recommended decision on the motion. *Cf. Tejarat v. Varsho-Saz,* 981 F.2d 1257 (table), 1992 WL 356992, at **1 (9th Cir. Dec. 3, 1992) (listing cases); *Bennett v. General Caster Serv. of N. Gordon Co.*, 976 F.2d 995, 997-98 (6th Cir. 1992); *Reynaga v. Cammisa,* 971 F.2d 414, 416-17 (9th Cir. 1992); *Bishop v. Schriro*, No. CV 08-964-PHX-SMM (JRI), 2009 WL 1749989, at *2 (D. Ariz. June 18, 2009). I will shorten the time available to the parties to file objections to this recommended decision to expedite resolution of this issue.

1

injunction and a motion to consolidate the preliminary injunction hearing with trial on the merits pursuant to Federal Rule of Civil Procedure 65(a). *See* Plaintiff NOM's Third Preliminary Injunction Motion and Brief (Docket No. 115); Plaintiff NOM's Motion to Consolidate (Docket No. 117). The defendants initially opposed consolidation, *see* Defendants' Opposition to Plaintiff NOM's Motion To Consolidate (Docket No. 135), but after NOM agreed to the admissibility of certain evidence, withdrew their objection, *see* Defendants' Motion To Submit Additional Evidence Into the Record for a Consolidated Hearing on Plaintiff NOM's Third Motion for Preliminary and Permanent Injunctive Relief ("Motion To Submit Evidence") (Docket No. 152). Specifically, the defendants' acquiescence hinged on the admissibility of excerpts from NOM's 30(b)(6) deposition (Docket No. 152-1 in redacted form, and Docket No. 153-1 in unredacted form) and certain "affidavits and exhibits . . . (Docket Items 127-134)[.]" Motion To Submit Evidence ¶ 6. NOM did not object. *Id.* ¶ 7. This evidence included documents previously filed in redacted and unredacted form pursuant to a protective order entered by the court in February 2010. *See* Consent Confidentiality Order (Docket No. 49).

The defendants' withdrawal of their objection to consolidation did not, however, clarify the scope of the entire trial record. Accordingly, the court requested that the parties file a joint stipulated record, and they did so. *See* Stipulated Record of Consolidated Hearing on Plaintiff NOM's Third Motion for Preliminary Injunction and the Merits of Counts V-VIII of Plaintiffs' Second Amended Verified Complaint ("Stipulated Record") (Docket No. 157). The parties' stipulation referenced sealed documents, but it did not otherwise state that previously-sealed documents should remain under seal after trial. Neither party filed a motion to close the trial to the public or to keep trial evidence secret. After receiving the parties' stipulation, the court granted NOM's motion to consolidate.

On August 12, 2010, the case came before Judge Hornby for a bench trial. At the outset, Judge Hornby noted that he was aware that certain filings had been made under seal during discovery, but that since the parties had now stipulated a trial record and since trials are ordinarily public proceedings, he expected that everything stipulated was no longer under seal. NOM's attorney told Judge Hornby that NOM wanted documents filed under seal to remain under seal even though, as he conceded, "the sealing all had to do with the first part of the complaint," which was not at issue at trial. The defendants took no position about whether to keep the record sealed. Judge Hornby ordered the plaintiff to report to the court by the end of the next business day what NOM believed should remain under seal. NOM timely filed notice with the court of the documents it wished to keep sealed, but did not inform the court *why* they should remain secret. *See* Notice re Record of Consolidated Hearing on Plaintiff NOM's Third Motion for Preliminary Injunction and the Merits of Counts V-VIII of Plaintiffs' Second Amended Complaint (Docket No. 161).

On August 16, 2010, Judge Hornby ordered NOM to show cause why the documents should remain sealed. *See* Order To Show Cause Regarding Sealed Evidence ("Order To Show Cause") (Docket No. 162). NOM timely filed a response. *See* Response to Order to Show Cause Regarding Sealed Evidence ("Response to Show Cause Order") (Docket No. 163).

On August 19, 2010, the court issued its trial decision, finding in part for the plaintiff and in part for the defendants. The court denied NOM's request to keep trial evidence under seal, explaining:

> The materials constituting the trial record were originally filed under seal. I had no involvement in what the parties determined the record should be and certainly made no ruling that the trial evidence would be sealed. I am not willing to make a First Amendment decision based upon a sealed record. As evidence at trial, the record is now public in precisely the way that it would have been had live witnesses been called to testify. The parties must re-file the trial evidence as

unsealed documents, part of the public record, but with any redactions required by
Fed. R. Civ. P. 5.2.

Bench Trial Decision and Order on Motion for Injunctive Relief ("Bench Trial Decision") (Docket No. 164) at 2 n.4. NOM appealed Judge Hornby's decision and moved to stay the order regarding unsealing the trial evidence on August 20, 2010. *See* Motion for Stay.

## II. Discussion

The factors governing the issuance of a stay pending appeal are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

### A. Likelihood of Success

As to the first factor, I conclude that NOM has not made a strong showing that it is likely to succeed on the merits. NOM's motion for stay is substantially indistinguishable from its response to the order to show cause that Judge Hornby read and considered before determining that the trial record should be unsealed. *Compare* Motion for Stay *with* Response to Show Cause Order. In the Order To Show Cause, Judge Hornby noted that keeping documents under seal may be appropriate during discovery because "[p]ublic access to the discovery process [does not] play a significant role in the administration of justice." Order To Show Cause at 2 (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 12 (1st Cir. 1986)). But trial is different. *Id*. (citing *Richmond Newspapers v. Virginia*, 448 U.S. 555, 575 & 580 n.17 (1980) ("The Bill of Rights was enacted against the backdrop of the long history of trials being presumptively open[,] . . . [and] historically both civil and criminal trials have been presumptively open."); *Huminski v. Corsones*, 396 F.3d 53, 81 (2d Cir. 2004) ("For many centuries, both civil and criminal trials

4

have traditionally been open to the public.") (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979)); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1069 (3d Cir. 1984) ("[The] public right of access to civil trials . . . is inherent in the nature of our democratic form of government.")). There is a longstanding presumption that judicial records are public and that evidence in proceedings should be presented in open court. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (recognizing common-law right of access to judicial records); *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412-13 (1st Cir. 1987) (presumption of a public right of access attaches to "documents which properly come before the court in the course of an adjudicatory proceeding").

The right of public access to judicial records is not absolute, however. *United States v. Connolly (In re Boston Herald, Inc.)*, 321 F.3d 174, 184 (1st Cir. 2003) ("[T]he First Amendment does not grant the press or the public an automatic constitutional right of access to every document connected to judicial activity."). The First Circuit directs that, to determine whether First Amendment interests are implicated, courts "look at whether materials like these [] documents have been open to the public in the past, 'because a tradition of accessibility implies the favorable judgment of experience[,]' [and] ask 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* (quoting *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986)).

Here, there can be little doubt that civil trials have traditionally been open to the public and that the public's right of access to trial evidence pertaining to the vindication of First Amendment rights is comparable to the right of access to criminal trials. Moreover, as explained below, particularly in a case where a federal court strikes down a state law on constitutional grounds, public access to trial evidence plays a significant positive role with respect to the overall judicial process.

5

I conclude that there is a First Amendment right of access to the trial record in this case, and therefore strict scrutiny applies. *Id.* at 181-82; *see also Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004).[2] The "compelling reasons" standard applies even if evidence was previously filed under seal or protective order. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). As Judge Hornby explained, a "party seeking to keep trial evidence secret 'bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order to issue,' meaning that here the plaintiff must show that 'disclosure will work a clearly defined and serious injury' and this must be 'shown with specificity.'" Order To Show Cause at 2-3 (quoting *Publicker Indus.*, 733 F.2d at 1071).

Such a specific showing is necessary because, ordinarily, "[d]ocuments to which the public has a qualified right of access may be sealed only if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *United States v. Aref*, 533 F.3d 72, 82 (2d Cir. 2008) (quoting *Press-Enter. Co,* 478 U.S. at 13-14). The Supreme Court has stated that when a court finds that the presumption of access has been rebutted by some countervailing interest, that "interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984). The public is also entitled to notice of a party's request to seal the judicial record and to an opportunity to object to the request. *See In re Knoxville News-Sentinel Co.,* 723 F.2d 470, 474-76 (6th Cir. 1983); *United States v. Criden*, 675 F.2d 550, 557-60 (3d Cir. 1982) (due

---

[2] The First Circuit has elsewhere recognized with respect to the common law right of access that "only the most compelling reasons can justify non-disclosure of judicial records." *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005) (quoting *FTC*, 830 F.2d at 410) (internal quotation marks omitted).

6

process requires that the public be given some notice that closure may be ordered in a criminal proceeding to give the public and press an opportunity to intervene and present their objections to the court).[3]

Here, NOM did not provide Judge Hornby (and has not provided me) with the necessary showing to justify closure of the trial record. NOM has taken a back door approach to maintaining the judicial record under seal after trial. It is true that the documents were sealed and covered by a protective order during discovery, but NOM chose to go to trial based on a stipulated record. This stipulation never requested that the evidentiary record at trial remain under seal. *See* Stipulated Record. NOM apparently assumed that the documents would remain sealed after trial. I note this to emphasize the significance of NOM's failure to make a specific request that the judicial record be sealed. That is, I do not now have before me specific arguments as to why specific information in the trial record should remain sealed, nor do I have argumentation for access by any member of the public or media group. There is an insufficient record for the requisite findings of fact. What I do have is Judge Hornby's clear indication that he would not have held the trial at all if NOM had insisted on proceeding based on secret evidence at trial. *See* Bench Trial Decision at 2 n.4.

NOM has not addressed the difference between discovery and trial and the very different set of interests that each involves. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *Washington Post*, 386 F.3d at 576 ("[O]nce the documents [are] made part of a

---

[3] In *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 508 (1st Cir. 1989), the First Circuit declined to reach the issue of what type of notice was appropriate to make the public aware of proceedings on the issue of whether to seal part of a judicial record.

dispositive motion, they los[e] their status as being 'raw fruits of discovery[';] . . . discovery, 'which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court.'") (citation omitted). Strict scrutiny applies to the sealing of trial records because of the strong public interest involved, and the district court "must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." *Washington Post*, 386 F.3d at 576; *see also Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (explaining that a trial court considering whether to seal a judicial record must "not merely allow continued effect to a pretrial discovery protective order").

Neither has NOM made any specific arguments about specific harms accruing from specific disclosures in particular documents in the trial record. Rather, NOM offers generalized arguments about possible harms. *See* Response to Show Cause Order at 4-8 (discussing harm from disclosure of strategy documents without specifics, the theoretical possibility that disclosure of NOM's agents "could" expose them to threats, and harm to judicial efficiency); Motion for Stay at 6-9 (same); *see also Press-Enter. Co.*, 478 U.S. at 15 (public right of access to trial cannot be overcome by a conclusory assertion).

I therefore conclude that NOM has not made a strong showing of the likelihood of success on the merits.

### B. Irreparable Harm

NOM alleges the loss of First Amendment freedoms, which "unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), but NOM has not shown likely injury from disclosure with any kind of specificity. Irreparable harm is a "sliding scale, working

8

in conjunction with a moving party's likelihood of success on the merits." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009); *see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) ("[T]he predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem.") (citation omitted); *Gately v. Massachusetts*, 2 F.3d 1221, 1232 (1st Cir. 1993) (increased showing of irreparable harm required if other factors counsel against relief). *Hilton* requires a "strong" showing of a likelihood of success for issuance of a stay. NOM has not made a strong showing that harm to its interests should trump public access to the judicial record in this case. NOM points to claims by its executive director that public disclosure would hamper NOM's ability to engage in expressive activity, make it difficult or impossible for NOM to inform its board of directors of its activities, and force him to rely less on written communications with NOM employees. Declaration of Brian Brown (Docket No. 163-1), Exh. 1 to Response to Show Cause Order, ¶¶ 5-7. These are conclusory allegations of generic harm without any specific reference to the documents at issue here.

NOM's other evidence of possible harm from disclosure is no stronger. There are affidavits from other cases, which again do not bear directly on this case and certainly do not speak to specific harm resulting from public disclosure of the trial record in this case. *See, e.g.*, Declaration of [John Doe #52] (Docket No. 163-2), Exh. 2 to Response to Show Cause Order. NOM does offer an affidavit from a NOM donor in Maine. *See* Affidavit of Bruce I. Elder (Docket No. 163-3), Exh. 3 to Response to Show Cause Order. But NOM has failed to identify any place in the stipulated trial record where any such donor's identity or personal information is disclosed, and my search of the trial record has not revealed any. NOM, therefore, has not established "a reasonable probability" that the disclosure of the stipulated trial record will subject any of its donors to threats, harassment, or reprisals. *Doe v. Reed*, 130 S. Ct. 2811, 2820 (2010).

Thus, while NOM argues generally that "[d]isclosure of the fact that [some] entities have a business relationship with NOM could expose them to harassment, threats, loss of business, and other types of concrete harms," Motion for Stay at 8, it has not offered a detailed showing that full disclosure of the trial record in this particular case would will lead to any kind of concrete harm to anyone in particular.

Given the weakness of NOM's showing on the likelihood of success, such hypothetical harm is simply not enough to justify a stay.

### C. Substantial Injury to Other Interested Parties, Public Interest

I have little basis for evaluating harm to other interested parties. At trial, the defendants took no position regarding the secrecy of the trial record. Representatives of the press and of other groups affected by the court's decision to declare a portion of Maine election law unconstitutional have not had a chance to intervene.[4] However, "there is a strong societal interest in public trials." *Gannett*, 443 U.S. at 383 ("Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system.") (citation omitted). "Such openness to the public can also 'foster[] an appearance of fairness[]' and thereby 'boost[] community trust in the administration of justice.'" *Huminski*, 386 F.3d at 145 (citations omitted); *Richmond Newspapers*, 448 U.S. at 578 ("[A] trial courtroom [] is a public place where the people generally – and representatives of the media – have a right to be present, and where their presence historically has been thought to enhance the integrity and quality of what takes

---

[4] I note that courts have discussed the denial of public access to adjudicatory proceedings as constituting "irreparable harm" to the press. *See, e.g., Detroit Free Press v. Ashcroft*, 303 F.3d 681, 711 (6th Cir. 2002) ("Open proceedings, with a vigorous and scrutinizing press, serve to ensure the durability of our democracy.").

10

place."").[5]  This societal interest in public access to trial evidence must necessarily be even stronger in a case like this, in which a federal court has struck down a state law on First Amendment grounds.[6]  Absent compelling reasons to deny them access, the people of Maine have the right to see the evidence supporting the court's decision to strike down a duly enacted law that bears directly on citizen participation in electoral democracy.  *See Richmond Newspapers*, 448 U.S. at 580-81 (noting that denial of access requires overriding interests and that the denial must be narrow).

### III. Conclusion

For the foregoing reasons, I recommend that the court **DENY** the Motion for Stay.  Should the court agree with this recommended decision, I recommend that it order the parties to re-file the stipulated trial record with the Clerk of the Court in paper form within 10 days of the issuance of its decision adopting it.

Given the strong presumption in favor of public access to trials and, particularly in this First Amendment case, to the trial evidence that forms the basis of the court's declaratory judgment that Maine election law is unconstitutional, I hereby **ORDER** that the schedule for the briefing of any objection to this recommended decision be expedited as follows: Any party

---

[5] The Supreme Court has recognized that although "the right to attend may be exercised by people less frequently today when information as to trials generally reaches them by way of print and electronic media[,]" the "basic right" is "in no way alter[ed.]  Instead of relying on personal observation or reports from neighbors as in the past, most people receive information concerning trials through the media whose representatives 'are entitled to the same rights [to attend trials] as the general public.'"  *Richmond Newspapers*, 448 U.S. at 577.

[6] The public interest in open trials is, therefore, stronger (and different) than the interest in enforcing the law that previously justified denial of the plaintiff's motion to stay a discovery order.  *See* Order on Plaintiffs' Motion To Stay (Docket No. 82) at 2.  The public right of access to trial evidence was not implicated in this court's prior order. Discovery is essentially private.  *See Cryovac,* 805 F.2d at 11 ("[T]here is no right of public access to documents considered in civil discovery motions.").  On the other hand, public access to trial evidence serves important structural purposes in our form of constitutional government.  *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982) ("[P]ublic access to the criminal trial fosters an appearance of fairness, thereby *heightening public respect for the judicial process.*") (emphasis added).  That interest is plainly implicated in civil cases such as this since the court's decision affected every voter in Maine.  *See Gannett,* 443 U.S. at 387 n.15 ("[I]n some civil cases the public interest in access . . . may be as strong as, or stronger than, in most criminal cases.").

wishing to object to this recommended decision shall file a written objection no later than August 27, 2010. Any response to any such objection shall be filed no later than August 31, 2010.

### ***NOTICE***

***Pursuant to the foregoing order, a party shall file its objection to those specified portions of the foregoing recommended decision for which de novo review by the district court is sought, together with a supporting memorandum, by August 27, 2010. A responsive memorandum shall be filed by August 31, 2010.***

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.***

Dated this 24th day of August, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge